IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **NICHOLAS PERRAS,** **Plaintiff,** v. **GALVESTON CENTRAL APPRAISAL DISTRICT,** **Defendant.** | Civil Action No. 3:24-cv-43 Jury Trial Demanded |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

Nicholas Perras, ("Perras" or "Plaintiff"), by and through his attorney of record, hereby complains of Galveston Central Appraisal District ("GCAD" or "Defendant"), and would respectfully show this Honorable Court the following:

1. INTRODUCTION

1.1. This is a gender discrimination and retaliation suit arising under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et.seq. ("Title VII").

1.2. GCAD discriminated against Perras by firing him because he was a man and because he reported gender discrimination. Two months before Perras was fired, then-Deputy Chief Appraiser Krystal McKinney told Perras that she was going to demote Perras and promote his subordinate, a less qualified woman, to positions at the same level, and explained that she "want[ed] a woman led organization."

1.3. This action seeks back pay, front pay, actual damages, compensatory damages, punitive damages, consequential damages, expert witness fees, court costs, attorney's fees, and pre-judgment and post-judgment interest.

## 2. PARTIES AND PERSONAL JURISDICTION

2.1. Plaintiff Nicholas Perras is a resident of Harris County, Texas. At all material times, Plaintiff was an "employee" as that term is defined by law.

2.2. Defendant Galveston Central Appraisal District is a Texas governmental entity created by the Texas Tax Code. Defendant may be served with process by serving its Chief Appraiser, Krystal L. McKinney, 9850 Emmet F. Lowry Expressway, Suite A101, Texas City, Texas 77591.

## 3. VENUE

3.1. Venue is proper in this District because Defendant's acts and omissions that give rise to Plaintiff's discrimination and retaliation claims were committed in whole in Galveston County, Texas.

3.2. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000(e), *et seq.*

## 4. PROCEDURAL REQUISITES

4.1. Plaintiff has exhausted all administrative prerequisites to the filing of this suit.

## 5. FACTS

5.1. GCAD hired Perras as a Residential Appraiser in October 2017. Perras performed well and GCAD was pleased with his work. Throughout Perras' employment with GCAD he worked long hours – as long as it took to get the job done.

5.2. In December 2020, Chief Appraiser Tommy Watson ("Watson") permanently moved Perras to the Commercial Appraisal Department with instruction to "fix" the department. GCAD promoted Perras to Director of Appraisal in December 2021.

5.3. Perras was very successful as Director of Appraisal, despite the Commercial Department being woefully understaffed. Perras was responsible for GCAD passing the Property Value Study with local value, implementing numerous new data analysis and modeling processes in the Commercial Department, creating a Uniform and Equal adjustment program for the Commercial Department, developing efficiency procedures for field work in the Residential Department, and defending GCAD values on appeal. Perras also developed and implemented a Communications and Outreach program, including personally funding the development of a new logo and content.

5.4. In February 2021, Watson promoted Krystal McKinney ("McKinney") to Deputy Chief Appraiser. McKinney told Perras that she would never work for Perras if he became Chief Appraiser. Perras was surprised by McKinney's comment. McKinney told Perras that he had an unfair advantage because he was a man, and that she was trying to break glass ceilings.

5.5. As Deputy Chief Appraiser, McKinney acted condescending to Perras and micro-managed Perras.

5.6. In May 2021, McKinney wrote Perras up for tardiness, even though Perras was a salaried employee. Meanwhile, other appraisers were often late or would not show up at all, and were not written up or disciplined.

5.7. McKinney docked Perras' pay even though Perras worked up to 80 hours per week. Perras regularly stayed late into the night to keep up with work because the Commercial Department was understaffed. Perras oversaw two appraisers in the department that were responsible for billions in property value. In a similar sized county, there would be 12 appraisers handling that volume of work.

5.8. In December 2021, GCAD promoted Perras to Director of Appraisal. By January 2022, Perras had asked for additional appraisers and clerical staff for over a year, to no avail. Perras also asked McKinney to attend the Chief Appraiser Institute to get his Certified Chief Appraiser designation. McKinney said she would talk to Watson about it, but later that month, she told Perras that Watson said no.

5.9. On August 24, 2022, McKinney and Perras attended a legal seminar in San Antonio. On the first evening, when McKinney and Perras were at Howl at the Moon bar, McKinney told Perras that she was going to eliminate Perras' position and demote him to Director of Commercial Appraisal, while promoting his subordinate, Stephanie Easterling, a residential appraiser who had no commercial appraisal experience, to a parallel Director of Residential Appraisal position. McKinney went on to say, "I just really want a woman led organization."

5.10. About a week after the San Antonio conference, Perras met with Watson and reported McKinney's discriminatory statement. Perras also reported McKinney's discriminatory treatment of him to Watson. Perras told Watson that he feared retaliation from McKinney if she found out that Perras was the source of a complaint. Watson told Perras he would not let that happen.

5.11. Watson told Perras that it was a mistake to promote McKinney to Deputy Chief. Watson said he regretted it, but that there was nothing he could do about it now. Watson assured Perras that he would not be demoted, and that Perras was the best appraiser he had ever had.

5.12. Watson told Perras he would talk to McKinney about Perras' complaint.

5.13. In September 2022, McKinney allowed Easterling to attend the Chief Appraiser Institute to get her Certified Chief Appraiser designation. McKinney had denied Perras that same opportunity back in January 2022. When Perras learned of this, he complained to Watson about this blatant act of gender discrimination. Watson was shocked and angered to hear this. Watson told Perras that he had no idea that Perras wanted to go to the Institute. Watson denied that he told McKinney that Perras could not go.

5.14. Perras complained again to Watson that McKinney was actively discriminating against him because he was a man, and that she openly wanted a woman led organization. Watson said that he spoke to McKinney already. Watson told Perras that discrimination has no place at GCAD. Watson assured Perras that he was going to take care of this. Perras repeated his fear of retaliation. Watson told Perras that, going forward, he should come directly to Watson with issues, especially those with McKinney, and that he would handle them.

5.15. On Friday of that week, Perras confronted McKinney directly. Perras told McKinney that she had been disrespectful to him, especially when she told him that she would demote him because he was a man. McKinney said she had been drunk, but she did not deny her words.

5.16. On Monday, October 3, 2022, Perras had an early meeting with appraisers from Brazoria CAD. Perras forgot that he needed to pick up some of the GCAD staff along the way so he turned around to get them. When Perras got to the GCAD office at 8:30 am, McKinney

5

immediately ordered him home without pay. Perras protested that the meeting with BCAD was too important to miss and that he would still attend the meeting even if he wasn't paid. McKinney agreed with Perras that the meeting was too important to miss and did not object to his attending. Perras told McKinney that he would talk to Watson when he got back from vacation. McKinney became visibly upset that Perras wanted to talk to Watson.

5.17. The next day, October 4, 2022, Perras had to run some errands for GCAD and work in the field. When Perras texted McKinney that he was going to be in the field, McKinney told him that he needed to report to the office because he was absent the previous day. Perras protested that he was not absent, but rather that McKinney had sent him home without pay although he had still attended the meeting with BCAD. McKinney texted Perras that she was writing him up for insubordination.

5.18. The next day, October 5, 2022, McKinney told Perras that she was recommending to Watson that Perras should be fired. Perras told her that he would talk to Watson when he returned from his vacation the following week, as Watson had instructed him to do. McKinney then suspended Perras for the remainder of the week "pending investigation."

5.19. There was no investigation to come. Perras went to Watson's office in the morning of October 10, 2022, and found McKinney there. McKinney and Watson met for about an hour while Perras waited outside.

5.20. After McKinney left, Watson told Perras, "Just say whatever you want to say." Perras started to talk but Watson stopped him. Watson said that McKinney was not being discriminatory. Perras said that it sounded as though Watson's mind was already made up.

5.21. Watson said that he had not yet seen McKinney's latest write-up of Perras. However, Watson told Perras, "This just isn't going to work out" and fired Perras.

5.22. Within a week or two after Perras was fired, McKinney hired the clerical assistant Perras had been requesting for over two years. McKinney also announced that Easterling would be promoted to replace Perras. McKinney finally hired a woman, Katharine McGee, to take over Perras' job.

5.20. GCAD's actions constitute gender discrimination and retaliation for reporting gender discrimination, in violation of Title VII.

## 6.  GENDER DISCRIMINATION AND RETALIATION- TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

6.1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

6.2. Defendant GCAD's actions set forth above, as well as other facts that will be developed through discovery, violate Title VII.

6.3. Plaintiff was subjected to discriminatory terms and conditions of employment based on his gender, was demoted because of his gender, and was terminated because of his gender.

6.4. Plaintiff reported the gender discrimination in good faith.

6.5. Plaintiff was retaliated against because of his good faith reports of gender discrimination. Plaintiff was terminated because of his reports of gender discrimination.

6.6. Plaintiff has suffered damages as a result of the gender discrimination and retaliation, and seeks all relief allowed by law.

## 7.  JURY DEMAND

7.1. Plaintiff hereby requests a jury trial and has paid the jury fee.

## 8.  PRAYER

8.1. Plaintiff respectfully prays for the following relief:

  i. Judgment against Defendant for actual damages sustained by Plaintiff as alleged herein, including actual damages, special damages, compensatory damages, lost wages in the past and future, lost benefits in the past and future, emotional damages

          in the past and future, punitive damages, pre-judgment and post-judgment interest, and any other damages as allowed by law;

ii. Reinstatement;

iii. Attorney's fees, costs, and expenses, as permitted by law;

iv. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

          Respectfully submitted,

          SHELLIST LAZARZ SLOBIN LLP


          */s/ Dorian Vandenberg-Rodes*
          Todd Slobin
          State Bar No. 24002953
          tslobin@eeoc.net
          Dorian Vandenberg-Rodes
          State Bar No. 24088573
          drodes@eeoc.net
          11 Greenway Plaza, Suite 1515
          Houston, Texas 77046
          (713) 621-2277 (Tel)
          (713) 621-0993 (Fax)

          ATTORNEYS FOR PLAINTIFF