United States District Court
Southern District of Texas
**ENTERED**
October 27, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS PERRAS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00043 |
| | § | |
| GALVESTON CENTRAL APPRAISAL DISTRICT, | § § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before me in this employment discrimination suit is a motion for summary judgment filed by Defendant Galveston Central Appraisal District ("GCAD"). *See* Dkt. 26. Having reviewed the briefing, the record, and the applicable law, I deny the motion.

### BACKGROUND

Plaintiff Nicholas Perras worked for GCAD from October 2, 2017, until October 10, 2022. Perras was hired and fired by Tommy Watson, the Chief Appraiser at GCAD. Watson claims he decided to terminate Perras after observing Perras's excessive tardiness and insubordination. Perras insists that he was fired in retaliation for complaining about sexually discriminatory remarks from his supervisor, Krystal McKinney. The relevant facts are as follows.

Perras acknowledged receipt of GCAD's Personnel Policies Manual when he was hired in 2017 as a Residential Appraiser and when the manual was updated in 2020. Both versions of the manual state the same policy on tardiness: "All employees are expected to arrive at work on time. If an employee is late for work, he/she should notify his/her supervisor immediately. Employees will be disciplined up to and including termination, for repeated tardiness." Dkt. 26-4 at 15, 23.

In 2018, Perras had two tardies and acknowledged on his performance review that he needed to be better about arriving to work on time. In 2019, Perras had 12 tardies, 11 write-ups, two suspensions without pay, and was placed on disciplinary probation twice for excessive tardiness and bullying. In 2020, Perras had eight tardies and ranked himself below average on his performance review, acknowledging that he needed to report to work on time. In 2021, Perras had 21 tardies, one write-up, and two suspensions for tardiness and insubordination. Yet, Perras also received two promotions in 2021—first to Commercial Appraiser and then to Director of Appraisal. In 2022, Perras had 60 tardies and one write-up.

Beginning in February 2021, Perras reported directly to McKinney, the newly-appointed Deputy Chief Appraiser. McKinney reported to Watson. Perras claims—and GCAD disputes—that McKinney told Perras that she would never work for him if he became Chief Appraiser because, as a man, he had an unfair advantage, and she intended to break glass ceilings. Perras's relationship with McKinney turned hostile once McKinney became Perras's supervisor. Perras felt McKinney micromanaged him, spoke disrespectfully to him, and gave him too heavy a workload.

On August 24, 2022, while attending a legal seminar in San Antonio, Perras testified that McKinney told him she wanted a "woman-led organization" and discussed her desire to "demote [him] and promote [a] female employee to a similar level position." Dkt. 27-1 at 149. Perras testified that, after returning from the seminar, he met with Watson and reported McKinney's remarks as discriminatory. *See id.* at 165. GCAD vehemently disputes that McKinney made such remarks. GCAD also disputes that Perras reported such remarks to Watson.

In September 2022, the Texas Association of Appraisal Districts held its 2022 Chief Appraiser Institute. Watson, on behalf of GCAD, historically sent one appraiser to attend this leadership training. To attend, candidates were required to meet a list of requirements, including having five years of experience as an appraiser and current good standing at their place of employment. Team Lead

Supervisor, Stephanie Easterling, a female employee, requested to attend the training, and Watson approved. Perras testified that he asked McKinney if he could attend the leadership training, and McKinney told him she would ask Watson. After not being selected, Perras claims McKinney "lied to him" by stating "that Watson had denied Perras permission to attend," when McKinney never asked Watson and instead recommended to Watson that Easterling attend. Dkt. 27 at 28–29 (citing Dkt. 27-1 at 175–76). Perras reported the situation to Watson, expressing concern that he would be retaliated against for bringing it to his attention. Perras testified Watson told him in their meeting that Watson had been unaware of Perras's desire to attend the leadership training. *See* Dkt. 27-1 at 176.

On October 3, 2022, Perras reported late to work. On October 4, 2022, McKinney instructed Perras to check in at the office before going to work in the field. Perras did not check in at the office first as instructed. As a result, McKinney wrote Perras up for insubordination. On October 5, 2022, McKinney suspended Perras and recommended his termination to Watson. On October 10, 2022, Watson terminated Perras.

Watson held sole authority to terminate an employee and claims he made the decision independently based on his observations of Perras's excessive tardiness and prior insubordination. Perras testified that he does not know why Watson fired him, but Perras believes that McKinney influenced Watson's decision to terminate Perras based on sex discrimination. Watson and McKinney split Perras's responsibilities for five months before eliminating Perras's role and splitting his duties between two women. The residential appraisals that had previously been under Perras's purview were reassigned to Easterling, a woman. Another woman was hired as a Commercial Supervisor, taking over the commercial appraisals that had previously been part of Perras's responsibilities.

On February 12, 2024, Perras filed this lawsuit against GCAD, asserting claims for Title VII sex discrimination and retaliation. Discovery has closed, and GCAD has moved for summary judgment on both claims.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit[,] and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (citation modified).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "For a defendant, this means showing that the record cannot support a win for the plaintiff—either because the plaintiff has a failure of proof on an essential element of its claim or because the defendant has insurmountable proof on its affirmative defense to that claim." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). "If the defendant succeeds on that showing, the burden shifts to the plaintiff to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the plaintiff permits a jury verdict in the plaintiff's favor." *Id.*

"To satisfy its burden, the party opposing summary judgment is required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citation modified). "It is axiomatic that the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quotations omitted).

## ANALYSIS

A.  **TITLE VII SEX DISCRIMINATION**

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Perras claims GCAD discriminated against him on account of his sex in violation of Title VII.

Unlawful discrimination may be established through either "direct or circumstantial evidence, or both." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994). "If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

Perras testified that, seven weeks before his termination, McKinney said she wanted a "woman-led organization" and asked him how he would feel about her demoting him and promoting a female employee to a similar level position. Dkt. 27-1 at 148–49. Perras contends that this statement is direct evidence of discrimination. The Fifth Circuit applies a four-prong test to determine whether a remark is considered direct evidence of discrimination. *See Laxton v. Gap Inc.*, 333 F.3d 572, 583 n.4 (5th Cir. 2003). Under that four-prong test, a remark constitutes direct evidence of discrimination if it is "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015).

As to the first prong, McKinney's remark about a "woman-led organization" and her expressed desire to demote a man and promote a woman is plainly related to Perras's protected characteristic: sex.

As to the second prong, the Fifth Circuit has found two months to be proximate in time, and seven weeks is less than two months. *See Palasota v.*

5

*Haggar Clothing Co.*, 342 F.3d 569, 576–77 (5th Cir. 2003). Because of the close temporal proximity between McKinney's comments and Perras's termination, "it is a reasonable inference that [McKinney's] hostility affected the existence and/or contents of [her] recommendation" that Watson fire Perras. *Baldwin v. Holder*, No. H-09-842, 2011 WL 2078614, at *9 (S.D. Tex. May 26, 2011); *see also Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 307 (5th Cir. 2020) ("Although temporal proximity alone is insufficient . . . , the quick timing here, coupled with [McKinney]'s comments, if believed by a jury, would support a finding that [McKinney] impermissibly influenced [Watson].").

As to the third prong, it is undisputed that only Watson had the authority to fire Perras. Perras does not argue that Watson harbored discriminatory animus toward Perras. Instead, Perras argues that McKinney, acting on her discriminatory animus, influenced Watson's decision to fire Perras. This is known as the "cat's paw" theory of liability:

> Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any [discriminatory or] retaliatory animus. Under this theory, a plaintiff must establish that the person with a [discriminatory or] retaliatory motive somehow influenced the decisionmaker to take the [adverse employment] action. Put another way, a plaintiff must show that the person with [discriminatory or] retaliatory animus used the decisionmaker to bring about the intended [adverse employment] action.

*Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

"To invoke the cat's paw analysis, [Perras] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus; and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quotation omitted). "[I]f a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 562 U.S.

6

411, 422 (2011). "Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Id.* at 419 (citation modified). Applying this standard, factual issues remain as to whether McKinney's actions were a proximate cause of Perras's termination.

GCAD relies heavily on Watson's testimony that he cannot recall whether McKinney recommended that Watson terminate Perras's employment. *See* Dkt. 28 at 9. But the evidence suggests that McKinney met with Watson to discuss Perras immediately before Watson terminated Perras's employment. In response to Perras's EEOC charge, which stated that McKinney and Watson "met for about an hour" before Watson fired Perras, GCAD responded that "[a] meeting between McKinney and Watson to discuss [Perras's termination] would be expected." Dkt. 26-2 at 24. There is also evidence suggesting that Watson would have considered McKinney's recommendation when deciding to terminate Perras. For example, when Perras's previous supervisor, Marcel Pierel, recommended Perras's termination for tardiness in October 2019, Watson decided *not* to terminate Perras "*based on a recommendation from Krystal McKinney.*" *Id.* at 31 (emphasis added). A reasonable jury could conclude that Watson—who met with McKinney for an hour immediately prior to terminating Perras's employment—later decided to fire Perras *based on McKinney's recommendation.*

Watson contends that firing Perras was justified based on Watson's own observations of Perras's tardiness and insubordination, not on McKinney's recommendation. *See id.* at 31–32. That might be true, but the summary judgment evidence raises the possibility that McKinney influenced Watson's decision. *See Staub*, 562 U.S. at 420 ("The decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes."). In short, there is a genuine dispute of material fact as to whether McKinney influenced Watson's decision to fire Perras.

7

As to the fourth and final prong, McKinney's statement about demoting Perras and promoting a woman in his place is sufficiently related to the employment decision at issue to suggest that McKinney was motivated by improper bias. McKinney's comment indicated that she wanted to free up a spot for another woman, which is what happened when the new female Commercial Supervisor absorbed some of Perras's responsibilities after his termination.[1]

Because a reasonable jury could conclude that McKinney influenced Perras's termination, GCAD bears the burden to prove that it would have taken the same action regardless of McKinney's recommendation. Given that GCAD promoted Perras *twice* in the same year that Perras had 21 tardies, one write-up, and two suspensions for tardiness and insubordination, a reasonable jury could conclude that Watson would not have fired Perras but for McKinney's recommendation. Thus, GCAD has not shown that it is entitled to summary judgment on Perras's Title VII sex discrimination claim.

**B.     TITLE VII RETALIATION**

Perras also claims that he was retaliated against in violation of Title VII. It is unlawful for an employer to retaliate against an employee who opposes an unlawful employment practice. *See* 42 U.S.C. § 2000e–3(a).

The familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Title VII retaliation claims. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under this framework, Perras must first present a prima facie case of retaliation. Perras may achieve this "by establishing that: (1) [he] engaged in protected activity;

---

[1] GCAD contends that Fifth Circuit holdings provide "that where an employee is fired, the position is eliminated, and the duties split amongst other employees, a plaintiff cannot establish a *prima facie* case of discrimination." Dkt. 28 at 11 (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333 (5th Cir. 2021); *Long v. City of Llano*, No. 24-50663, 2025 WL 655800 (5th Cir. Feb. 28, 2025)). Both cases are distinguishable because they involved "no direct evidence" of discrimination and the plaintiffs were forced to "rely on circumstantial evidence." *Long*, 2025 WL 655800 at *2; *see also Ernst*, 1 F.4th at 339–40. Here, Perras has presented direct evidence of discrimination. Thus, *Ernst* and *Long* are inapposite.

8

(2) the employer took a materially adverse action against [him]; and (3) a causal link exists between [his] protected activity and the adverse action." *Id.*

"The causation element is stringent." *Jones v. Miss. Sec'y of State's Off.*, No. 3:18-cv-281, 2022 WL 21295451, at *4 (S.D. Miss. Mar. 3, 2022). "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. S.W. Med. Cntr. v. Nassar*, 570 U.S. 338, 360 (2013).

If Perras establishes a prima facie case, GCAD "bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). Then, if GCAD articulates a legitimate, non-retaliatory reason for its employment decision, the burden shifts back to Perras to establish that GCAD's "proffered reasons were a pretext for discrimination." *Id.*

Perras alleges that GCAD retaliated against him by terminating his employment after he complained to Watson about McKinney's discriminatory statements. *See* Dkt. 27 at 29. GCAD acknowledges that, at a minimum, Perras "could make a *prima facie* case of retaliation based on the women-led organization comment." Dkt. 26 at 36.[2] Even so, GCAD has articulated a legitimate, non-

---

[2] GCAD argues that Perras complaining to Watson about not being sent to the Chief Appraiser Institute "is not protected activity under Title VII." Dkt. 26 at 35. I agree. An internal complaint qualifies as protected activity when it "explicitly alleges discrimination or harassment based on a protected characteristic." *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 432 (W.D. Tex. 2025). Complaints about "ineffective leadership" or "a manager's dislike and belittlement" will not suffice. *Id.* (quotations omitted). There is nothing in the record to indicate that when he complained to Watson, Perras alleged that McKinney's decision to send someone else to the Chief Appraiser Institute was based on sex discrimination. Thus, that complaint does not qualify as protected activity. That is inconsequential, however, because GCAD acknowledges that Perras's complaint to Watson about McKinney's sex-based comments "could make a *prima facie* case of retaliation." Dkt. 26 at 36. In the same sentence, GCAD denies that McKinney ever made such comments. *See id.* GCAD also maintains that Perras never complained about such comments to Watson. But given Perras's testimony the contrary, whether McKinney

9

retaliatory reason for terminating Perras's employment. GCAD contends that "[h]abitual tardiness, failure to follow time and attendance rules, and insubordination are legitimate, nondiscriminatory reasons for termination." *Id.* at 33. I agree—tardiness and failure to follow rules are indeed legitimate reasons for terminating an employee's employment. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) ("[T]he company has consistently stated an entirely lawful reason for dismissing Delaval: he violated the company's attendance policy."); *Corley v. La. ex rel. Div. of Admin., Off. of Risk Mgmt.*, 498 F. App'x 448, 451 (5th Cir. 2012) (holding that plaintiff's "insubordinate behavior" was a legitimate, non-retaliatory reason for termination).

Because GCAD has articulated a legitimate, non-retaliatory reason for Perras's termination, the burden shifts back to Perras to establish a genuine issue of material fact by providing "sufficient evidence that the proffered reason is a pretext for retaliation." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019). "While this portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001). Perras must demonstrate that he would not have been terminated "but for" engaging in the protected activity. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1123 (5th Cir. 1998).

To establish pretext, Perras relies on the same cat's paw theory discussed above in connection with his discrimination claim. "[T]o establish causation under a cat's paw theory, [Perras] must produce sufficient evidence that (1) his [GCAD] supervisors, motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of his [termination]." *Zamora*, 798 F.3d at 333. "A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was based in part

---

made such comments and whether Perras complained to Watson about those comments are fact issues that cannot be resolved on summary judgment.

on knowledge of the employee's protected activity." *Medina*, 238 F.3d at 684 (quotation omitted). Thus, to show that McKinney was motivated by a retaliatory animus, Perras must point to evidence in the record that McKinney knew about Perras's complaints to Watson. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) (explaining that "to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity"); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

This is a close call, but there is some evidence suggesting that Watson informed McKinney of Perras's complaints. Perras testified that "Watson told Perras that he would speak to McKinney regarding Perras's gender discrimination complaints." Dkt. 27 at 29–30 (citing Dkt. 27-1 at 166:5–9, 176:5–6, 176:16–17). This, coupled with Watson's own testimony that he would speak with the person accused of discrimination, *see* Dkt. 27-4 at 15–16, creates a genuine issue of material fact as to whether McKinney knew about Perras's complaints to Watson. Because a jury will be required to adjudicate Perras's discrimination claim, I think "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## CONCLUSION

For the reasons discussed above, GCAD's motion for summary judgment (Dkt. 26) is denied. The trial of this case will commence on Monday, January 26, 2026, at 9 am. I will issue a more detailed pretrial order in the next few weeks.

SIGNED this 27th day of October 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

11